# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
No. 22-0840V

|  |  |
|---|---|
| JANINE ETCHEBARREN-SCHOLES,<br><br>                   Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                   Respondent. | Chief Special Master Corcoran<br><br><br>Filed: May 2, 2025 |

*Paul R. Brazil*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Mary Novakovic*, U.S. Department of Justice, Washington, DC, for Respondent.

**DECISION AWARDING DAMAGES**[1]

On August 2, 2022, Janine Etchebarren-Scholes filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a Table shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine she received to her right shoulder on September 17, 2020. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

Although Petitioner has been found entitled to compensation, the parties could not agree on the damages to be awarded, and therefore the matter was scheduled for a

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

"Motions Day" proceeding. For the reasons discussed below, and after hearing argument from the parties, I find that Petitioner is entitled to compensation in the amount of $115,000.00 for her actual pain and suffering.

### I.     Procedural History

On November 8, 2023, I issued a ruling on entitlement in favor of Petitioner. ECF No. 26. But the parties were unable to agree on damages, and therefore agreed to brief the issue. ECF No. 35. On December 5, 2024, Petitioner filed her brief in support of damages ("Mot."), and Respondent filed a Response on January 29, 2025 ("Opp."). Petitioner did not file a reply. ECF Nos. 40-41. I heard arguments from both parties during a Motions' Day Damages hearing held on April 30, 2025.

### II.    Relevant Medical History

A complete recitation of the facts can be found in the Petition, declarations, the parties' respective pre-hearing filings, and in Respondent's Rule 4(c) Report.

In brief summary, Ms. Etchebarren-Scholes was 54 years old at the time she received the flu vaccine in her right shoulder at a Kaiser Permanente medical facility on September 17, 2020. Ex. 1 at 11. Her past medical history showed that three years prior to this vaccination, she underwent bilateral shoulder x-rays due to pain, and there is a medical record indicating some complaints of bilateral shoulder pain in March 2020. Ex. 2 at 755-786. However, Respondent has not argued that any of these complaints contributed to Petitioner's SIRVA injury.

On September 28, 2020 (11 days after vaccination), Petitioner went to urgent care for complaints of "right arm pain after receiving flu shot 09/17/2020." Ex. 2 at 1180. She reported that her "[p]ain started after she was given the flu shot in her right deltoid muscle. Did have some redness and swelling initially but those symptoms have resolved but the pain is increasing." *Id.* On exam, Petitioner had decreased range of motion ("ROM") with increased pain with abduction of shoulder and tenderness. *Id.* She was diagnosed with bursitis of the right shoulder and prescribed Prednisone. *Id.* at 1181.

On October 6, 2020, Petitioner emailed her primary care provider ("PCP") stating, "day after flu shot I could not use my arm, arm has more mobility now but pain with movement." *Id.* at 1204. Petitioner emailed her PCP again five days later, writing, "[m]y arm is so messed up I can't do any range of motion exercise cause my arm won't move to do it. My jobs r (*sic*) threatened and I'm in so much pain from this. *Id.* at 1205. *See* Ex. 2 at 1205, 1210, 1217-19, 1223, 1231.

On November 4, 2020, Petitioner's received a right subacromial cortisone injection. Ex. 2 at 1250. Although the injection helped her gain some mobility, Petitioner still complained of pain and requested a stronger pain medication. Ex. 2 at 1267; Ex. 7 at 828.

On December 1, 2020, Petitioner contacted her neurologist, Justin Cho, M.D., whom Petitioner previously saw for vertigo and headaches. Ex. 2 at 1288-1290. Petitioner was concerned that her right shoulder pain might reflect CRPS or brachial neuritis. *Id.* Dr. Cho responded advising, "[s]o CRPs can occur after minor injuries but is not very common and has certain features on exam." *Id.* at 1290. He also responded that, "[b]rachial neuritis also is not quite common and would be strange to occur from a local injection since the nerves in the brachial plexus are deep in the shoulder area." *Id.*

On December 16, 2020, Petitioner underwent an MRI of her right shoulder which revealed a 1.4cm full-thickness tear of the anterior aspect of the supraspinatus tendon footprint, and mild-to-moderate subacromial/subdeltoid bursal fluid/bursitis. Ex. 2 at 1308-09.

Petitioner returned to Dr. Cho on December 17, 2020. Ex. 2 at 1322-25. Petitioner related her pain to her flu vaccination, but Dr. Cho was unclear if there was a causal relationship. *Id.* at 1326. Dr. Cho was less suspicious of CRPS given Petitioner's exam. *Id.* He recommended a trial of a different prescription pain medication. *Id.*

On December 23, 2020, Petitioner reviewed the results of the MRI with a treater. Ex. 2 at 1345. Surgery was discussed, but Petitioner wanted to consider her options. *Id.* at 1345. Later that day, Petitioner decided to proceed with surgery. *Id.* at 1352. However, due to COVID restrictions, the surgery was postponed. *Id.* Petitioner underwent a cervical MRI on January 6, 2021, which showed "[m]ild to moderate cervical spondylosis." *Id.* at 1329; Ex. 7 at 874. On January 17, 2021, Petitioner received a second right subacromial cortisone injection. *Id.* at 1381. At another treater visit in March 2020, it was proposed that some of Petitioner's pain was from her right rotator cuff tear. *Id.* at 1380-81.

Thereafter, Petitioner saw several other orthopedic providers for opinions on her right shoulder pain. *See,* e.g.*,* Ex. 4 at 30, 83-89; Ex. 7 at 952. On May 18, 2021, Petitioner saw orthopedist Sarah Lewis, M.D. Ex. 4 at 83. Petitioner stated that her pain began after her flu vaccine and that treatment measures thus far had not provided relief. *Id.* Dr. Lewis noted that petitioner had a "CRPS like response." *Id.* at 89.

Petitioner continued to see Dr. Lewis for her right shoulder pain, as well as for treatment of her carpal tunnel syndrome. *See, e.g,* Ex. 4 at 141-44, 366. Dr. Lewis also referred Petitioner to an integrated pain management program, through which Petitioner attended some cognitive behavioral therapy classes and physical/occupational therapy ("PT/OT"). *See, e.g., id.* at 133, 177, 189, 230, 250-257, 326, 341, 366, 372, 395, 401.

3

On December 15, 2021, about 15 months after her vaccination, Petitioner saw a new orthopedic surgeon, Michael Charles, M.D. Ex. 7 at 1434. Petitioner reported her right shoulder pain as very severe, up to 10/10. *Id.* She also reported an improvement to her range of motion following injections and physical therapy, but no pain relief. *Id.* Dr. Charles recommended nightly gabapentin, a compounded topical ointment, and surgery. *Id.* at 1440.

On May 10, 2022, approximately 22 months post-vaccination, Petitioner underwent a right shoulder arthroscopy with rotator cuff repair. Ex. 7 at 2132; Ex. 8 at 8. Following shoulder surgery, Petitioner began physical therapy for her right shoulder. *See id.* at 1595-97, 1614-15, 1638, 1649, 1675-76, 1689, 1709, 1730-39. Petitioner saw Dr. Charles for right shoulder post-operative appointments. *Id.* at 1658-62, 1780-86; Ex. 8 at 21.

By June 22, 2022, Petitioner reported "feel[ing] much less pain in [her] R[ight] shoulder." Ex. 7 at 1675. On October 5, 2022, Petitioner reported that she was "doing excellent for A[ctive] ROM[,]" had "improving strength[,]" and was "[a]ble to finish all exercises without any complain[t]s of increase in pain to the affected area." *Id.* at 1858.

Petitioner had another appointment with Dr. Lewis on September 7, 2022. Ex. 7 at 1767-69. She reported that her right shoulder pain improved post-surgery. *Id.* Dr. Lewis was "happy to see [that] patient[']s right shoulder pain ha[d] improved." *Id.*

On October 20, 2022, Dr. Lewis performed a right cubital tunnel decompression and subcutaneous anterior transposition and right revision carpal tunnel release surgery. *See* Ex. 8 at 37. Petitioner continued to see Dr. Lewis for post-operative appointments and attended at least one occupational therapy appointment for her right hand. *See, e.g.*, Ex. 8 at 70-71, 78.

Petitioner's last right shoulder pain appointment was on November 21, 2022, when she followed up with Dr. Charles. Ex. 8 at 28. Though Petitioner reported persistent pain at the initial vaccination site, she "seemed to have full recovery" of her shoulder function. *Id.*

In her most recent declaration (dated December 5, 2024), Ms. Etchebarren-Scholes explained the impact of her injury on her personal life: "I have been in pain daily. I cannot take pain medication due to stomach issues, so I endure as best I can. When I move my shoulder, you can hear it crackle." Ex. 12 at 1. Petitioner also explained that her sleep has been negatively impacted and she cannot share the same bed as her husband due to pain and discomfort. *Id*. She stated that she cannot ride her motorcycle, practice

archery, go target shooting, throw darts, shoot pool, go kayaking, or swim. *Id*. Petitioner explained that she could not take showers because she was unable to raise her arms long enough to wash herself before the hot water ran out. *Id*. Petitioner also explained that her mental health declined because of her injury. She stated that her injury affected her relationship with her husband and children. *Id*. In addition, she explained that her injury affected her job as a caretaker of adults with mental disabilities. *Id*. at 1-2. Petitioner explained that her job as a caretaker is physically demanding and sometimes requires that she restrain patients. *Id*. at 2. She stated that she has missed 123 days of work and has exhausted her paid leave. *Id*.

### III. The Parties' Arguments

#### a. Petitioner

Ms. Etchebarren-Scholes maintains that the pain and suffering from her SIRVA injury has been very severe. Mot. at 6. She rated her pain at 10/10 more than one-year post vaccination. *Id*. Petitioner stated that she tried to schedule shoulder surgery just a few months after her vaccination, but Covid restrictions caused the surgery to be postponed. *Id*.

Petitioner stated that she saw a neurologist, occupational therapist, and two orthopedic surgeons to treat her injury. Mot. at 6. She received two cortisone injections, neither of which were very helpful, which led to her decision to pursue surgery. *Id*. at 7. Petitioner states that despite her best intentions, she suffered severe pain and dysfunction for a long time. *Id*. She stated that in the cases she cites in support of her claim, "none of them come close to [her] duration of suffering." *Id*. She stated that her duration of pain was high for the entire duration of her injury, 26 months. *Id*.

Petitioner cited to five cases in support of her claim for past pain and suffering: (1) *Cosden v. Sec'y of Health & Human Servs.*, No. 20-1783V, 2023 WL 2469255 at *4 (Fed. Cl. Spec. Mstr. Feb. 9, 2023), (2) *Kestner v. Sec'y of Health & Human Servs.*, No. 20-0025V, 2023 WL 2447499, at *7 (Fed. Cl. Spec. Mstr. Feb. 3, 2023), *Moore v. Sec'y of Health & Human Servs.*, No. 19-1850V, 2022 WL 962524, at *5, (Fed. Cl. Spec. Mstr. Feb. 25, 2022), *Smith v. Sec'y of Health & Human Servs.*, No. 19-745V, 2021 WL 2652688, at *5 (Fed. Cl. Spec. Mstr. May 28, 2021), and (3) *Brantley-Karaskinkski v. Sec'y of Health & Human Servs.*, No. 20-1058V, 2023 WL 7160919, *6 (Fed. Cl. Spec. Mstr. Sept. 28, 2023). Petitioners were awarded $ 110,000.00, $115,000.00, $115,000.00, $125,000.00, and $125,000.00, respectively, for their past pain and suffering in those cases.

### b. Respondent

Respondent has argued that the cases cited by Petitioner to support her request of $137,000.00 in pain and suffering "are not analogous to petitioner's situation," and thus a lower damages amount is justified. Opp. at 11. Respondent noted that Petitioner was seen just 11 days post vaccination for her shoulder pain, and she completed 12 sessions of PT (not the 28 claimed by Petitioner). He further noted that Petitioner received two steroid injections, was prescribed pain medications, and underwent shoulder surgery. *Id*. at 9. However, Respondent also noted that by November 21, 2022, Petitioner's orthopedic surgeon noted that Petitioner "seem[ed] to have full recovery of [her] shoulder" and that she had "[f]ull activity [within] 4-6 months[.]" *Id*.

Respondent also contends that Petitioner had significant comorbidities, including her cervical spondylosis and her recurrent carpal tunnel syndrome. Opp. at 9. While Petitioner's underlying carpal tunnel syndrome may have initial complicated her shoulder condition, Respondent noted that after Petitioner underwent shoulder surgery, she regained full shoulder function, although she continued to have persistent neurologic pain. *Id*. Respondent has argued that "there is no evidence that her carpal tunnel syndrome, cervical spondylosis, alleged CRPS injury, or any of her other conditions are related to her SIRVA injury, and any care or treatment for those conditions should not be considered in the calculation of petitioner's SIRVA damages award." *Id*. at 10.

Respondent has argued that the pain and suffering award in the case he cites, *Felland v. Sec'y of Health & Human Servs.*, No. 20-0406, 2022 WL 10724100, at *7 (Fed. Cl. Spec. Mstr. Sept. 6, 2022), is the more appropriate comparable case, and that Petitioner should be awarded a sum for pain and suffering equal to the amount awarded in this case, $100,000.00. Opp. at 10.

### IV. Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include an award "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). Petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no precise formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("Awards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.  *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

A special master may also look to prior pain and suffering awards to aid in the resolution of the appropriate amount of compensation for pain and suffering in each case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, a special master may rely on his or her own experience adjudicating similar claims. *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims). Importantly, however, it must also be stressed that pain and suffering is not determined based on a continuum. *See Graves v. Sec'y of Health & Human Servs.*, 109 Fed. Cl. 579 (2013).

### V. Appropriate Compensation in this SIRVA Case

Neither party disputes that that Ms. Etchebarren-Scholes had full awareness of her suffering, and I find that fact is supported by the record evidence.

As I noted during the hearing, Ms. Etchebarren-Scholes's SIRVA did require surgical intervention. Thus, a six-figure award for her pain and suffering is likely appropriate, absent extraordinary circumstances. The amount awarded in the case cited by Respondent, *Felland,* 2022 WL 10724100 (Fed. Cl. Spec. Mstr. Sept. 6, 2022), is still a bit too low despite its utility as a comparable decision, especially given the length of time Ms. Etchebarren-Scholes was treated for her injury and its demonstrated severe nature. The *Felland* petitioner, like Ms. Etchebarren-Scholes, underwent surgery, had two steroid injections, and participated in 12 PT sessions total. Opp. at 10. However, that individual otherwise suffered a mild SIRVA injury, with lower pain levels, and slightly limited ROM, for approximately one year. In contrast, there is no dispute among the parties that Ms. Etchebarren-Scholes's injury and treatment lasted for 26 months – more than twice the length of time the *Felland* petitioner suffered her injury.

However, the claimants in most of the cases cited by Ms. Etchebarren-Scholes received much more physical therapy (in most cases double the physical therapy) and did not have the same comorbidities affecting treatment evident in this case. While Ms. Etchebarren-Scholes claims in her brief that she had 28 PT sessions, a number of these sessions were related to her carpal tunnel release surgery, and there is no indication of shoulder treatment at these sessions. Thus, the number of PT sessions is closer the 12 claimed by Respondent. In addition, the treatment Ms. Etchebarren-Scholes received for her underlying comorbid conditions are separate and unrelated to her SIRVA injury. There is no indication that her carpal tunnel syndrome, cervical spondylosis, alleged CRPS injury, are related to her SIRVA injury, and any care or treatment for those conditions will not be considered in the calculation of her pain and suffering award.

That said, the cases cited by Petitioner that are closer to the lower end of the range ($110,000.00 to $115,000.00) seem to be good comparable cases. When considering the length of Petitioner's injury and the circumstances of her comorbidities and related treatment, the *Cosden*, *Kestner*, and *Smith* cases are more comparable cases and more persuasive. Based on all of the circumstances and evidence submitted, I find that her past pain and suffering warrants an award of $115,000.00.

## CONCLUSION

Based on my consideration of the complete record as a whole and for the reasons discussed in my oral ruling, pursuant to Section 12(d)(3)(A), **I find that $115,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.[3] Accordingly, I award Petitioner a lump sum payment of $115,000.00, in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a). The Clerk of Court is directed to enter judgment in accordance with this Decision.[4]

**IT IS SO ORDERED.**

s/Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

[3] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[4] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.